

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-2002

# USA v. Chambers

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2754

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Chambers" (2002). *2002 Decisions.* Paper 568.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/568

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES OF AMERICA

v.

HENRIETTA CHAMBERS,
                    Appellant

_____

UNITED STATES OF AMERICA

v.

JOHNATHAN KERR,
                    Appellant

_____

UNITED STATES OF AMERICA

v.

RICHARD R. BRADLEY,
                    Appellant

_____

On Appeal from the United States District Court
        for the District of New Jersey
(D. C. Criminal Nos. 00-cr-00514-3,2 and 1)
District Judge:  Honorable William H. Walls
_____

Submitted Under Third Circuit LAR 34.1(a)
       on September 13, 2002

Before:  SLOVITER and RENDELL, Circuit Judges
         and McCLURE*, District Judge.

(Filed September 13, 2002)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

    Before this court is the consolidated appeal of Henrietta Chambers, Johnathan
Kerr, and Richard R. Bradley.  Kerr and Bradley appeal their convictions and Chambers
appeals her sentence for conspiracy to import more than 500 grams of cocaine into the
United States from Jamaica between May and July 2000 in violation of 21 U.S.C.
952(a) and 963.  For the reasons set forth below, we will affirm the convictions and
sentence.
    On July 25, 2000, Chambers flew from Jamaica to Newark, New Jersey.  A routine

Customs inspection at Newark Airport revealed cocaine in the shoes she was wearing and in a pair of shoes inside her suitcase. After being arrested and interviewed by Special Customs Agent Jodi Medoff, Chambers agreed to cooperate in a controlled delivery. Agent Medoff arranged for Agents Jessie Esposito and Ruth Jackson to conduct surveillance. After observing Bradley escort Chambers outside to his and Kerr's cars,

_____

*Honorable James F. McClure, Jr., United States District Judge for the Middle District of Pennsylvania, sitting by designation.

speak with Kerr, and prepare to leave the airport, the Agents arrested Bradley and Kerr. All three were charged with conspiracy to import cocaine.

Chambers pled guilty to the charge; Bradley and Kerr were tried together. At trial, Shaquana Pressley testified that Bradley had recruited her, and Chambers had aided her, in a drug importation in May 2000. Based on this and other evidence, Bradley and Kerr were both convicted.

The District Court had jurisdiction based on 28 U.S.C. 3231. We exercise jurisdiction over Kerr and Bradley's appeals pursuant to 28 U.S.C. 1291 and over Chamber's appeal pursuant to 18 U.S.C. 3742(a).

As we write solely for the parties, who are familiar with the facts and procedural background of this case, we will confine our discussion to the legal issues presented and material facts relating thereto. We will address the issues presented by each appellant in turn.

## I. Johnathan Kerr

### A. Severance

Kerr first appeals the District Court's denial of his pre-trial motion under Fed. R. Crim. P. 14 to sever his trial from Bradley's, and the District Court's failure to sua sponte grant a mid-trial severance. We review the denial of the pre-trial motion for abuse of discretion and the failure to order severance sua sponte for plain error. United States v. Hart, 273 F.3d 363, 369-70 (3d Cir. 2001); United States v. Sharma, 190 F.3d 220, 230 (3d Cir. 1999). Even with an abuse of discretion, reversal is not required absent "clear and substantial prejudice" resulting in a manifestly unfair trial. Hart, 273 F.3d at 370 (quoting United States v. Palma-Ruedas, 121 F.3d 841, 854 (3d Cir. 1997), rev'd on other grounds, United States v. Rodriguez-Moreno, 526 U.S. 275 (1999)).

In his pre-trial motion, Kerr argued that severance was necessary because in a joint trial Bradley would be unable to take the stand to offer exculpatory evidence confirming that the $2180 dollars found in Kerr's pockets upon arrest was actually Bradley's. The District Court applied the factors set forth in United States v. Boscia, 573 F.2d 827, 832 (3d Cir. 1978), and found it unlikely that Bradley would testify in a separate trial, that such testimony if given would not be exculpatory, that Bradley could be impeached, and finally, that judicial economy weighed against severance. Denial of the motion was well within the sound discretion of the District Court.

Furthermore, Kerr has not demonstrated how a joint trial unfairly prejudiced his case in the way he urges. In numerous instances throughout the trial, Kerr introduced redacted statements from both Bradley and Kerr explaining that the $2180 had been given to Kerr to hold. Kerr was thus unhindered in making the argument that the money was not his; any slight disadvantage from not putting Bradley on the stand did not amount to "clear and substantial prejudice."

Kerr also argues that the District Court should have ordered a severance mid-trial because Kerr was prejudiced by "spillover" evidence regarding a drug importation managed by Bradley that formed part of the charged conspiracy, but in which Kerr did not take part. Because Kerr did not renew his severance motion during the trial, he must demonstrate that the District Court's failure to sever sua sponte was a plain error affecting substantial rights. Fed. R. Crim. P. 52(b); Hart, 273 F.3d at 371; United States v. Stevens, 223 F.3d 239, 242 (3d Cir. 2000), cert. denied sub nom, Stevens v. United States, 531 U.S. 1179 (2001). Kerr has not done so. We conclude that there was no error, let alone plain error, on the part of the District Court.

Accordingly, we conclude that the District Court did not abuse its discretion in denying Kerr's pre-trial severance motion or commit plain error in failing to sever mid-trial.

## B. Hearsay

Kerr next claims that the District Court violated Fed. R. Evid. 801 ) and the Confrontation Clause of the Sixth Amendment when it declined to redact the testimony of Customs Agent Jessie Esposito before it was given to the jury to read during deliberations.  Kerr did not object to the testimony when it was given at trial, therefore we review the District Court's ruling for plain error. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); United States v. Brink, 39 F.3d 419, 425 (3d Cir. 1994).

The District Court did not err in allowing the jury to read Esposito's testimony. The complained-of testimony consists of Esposito's explanation that when she and Agent Jackson entered the airport, "[they] were just looking to see if [they] could find the described individuals," and her later statement that when she "walked in there was a male that fit the description which we later identified as Richard Bradley." (A508, 509)  These statements are not hearsay: they were used to establish a background for her investigative conduct, not to prove any essential facts about the defendants.  See United States v. Tyler, 281 F.3d 84, 98 (3d Cir. 2002); United States v. Wilson, 107 F.3d 774, 780 (3d Cir. 1997).

We conclude that the District Court did not commit plain error in allowing the jury to read Esposito's testimony.

## C. Sufficiency of the Evidence

Kerr's final appeal is of the District Court's denial of his two motions for judgment of acquittal under Fed. R. Crim. P. 29(a) and  ).  We exercise plenary review over challenges to the sufficiency of the evidence. United States v. Taftsiou, 144 F.3d 287, 290 (3d Cir. 1998).  Such review is "highly deferential," United States v. Helbling, 209 F.3d 226, 238 (3d Cir. 2000), cert. denied, 531 U.S. 1100 (2001), and requires us to view the evidence in the light most favorable to the government, Hart, 273 F.3d at 371, and to the jury verdict, United States v. Pitt, 193 F.3d 751, 758 (3d Cir. 1999).

Viewing the evidence in the light most favorable to the government and to the jury verdict, we cannot say that no reasonable trier of fact could have convicted Kerr.  The government introduced evidence from which a reasonable juror could infer that Kerr had wired money to Chambers to set up her July drug importation and on numerous previous occasions under the assumed name of "Alvin Shaw;" that Kerr's ostensible reason for being at Newark Airport (to show Bradley the way) was most likely a concocted story, as Bradley had dropped off a rental car at the same airport that afternoon and Kerr had written down Chambers' flight number and time of arrival; that Kerr's explanation for why he came in a separate rental car (because he had to leave to pick up a friend at JFK Airport) was also likely concocted, as he remained at Newark Airport past the time when he would have needed to leave for JFK; that the flurry of phone calls between Kerr and Bradley around important times in the drug transactions were related to the conspiracy; that the $2180 in cash found in a separate bundle in Kerr's pockets upon arrest was connected to his participation in the drug deal; and that Kerr's statement that he had "an idea" that a drug deal was occurring evidenced his participation in the conspiracy.

Any possible introduction of hearsay evidence during Medoff or Esposito's original testimony was harmless as there was sufficient other evidence  presented by the government to allow a rational trier of fact to convict Kerr.

Because the District Court did not abuse its discretion or commit plain error in denying Kerr severance, or commit plain error in allowing the jury to read Esposito's testimony, and because the evidence presented by the government was sufficient to allow a rational trier of fact to convict Kerr, we will affirm Kerr's conviction.

## II. Richard R. Bradley

### A. Suppression

Bradley first contends that the District Court erred in denying his motion for a pre-trial evidentiary hearing and in denying his motion for suppression of statements and physical evidence obtained as a result of Bradley's arrest.  We review the District Court's denial of an evidentiary hearing for abuse of discretion. United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000), cert. denied, 122 S Ct. 76 (2001); United States v. Glass, 128 F.3d 1398, 1408 (10th Cir. 1997).  We review the District Court's denial of the motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to the facts.  United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

The District Court did not abuse its discretion in denying Bradley an evidentiary

hearing.  Bradley was not entitled to a hearing unless his moving papers demonstrated a "colorable claim" for relief.  United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996); Brink, 39 F.3d at 424.  Bradley's motion simply contained unsupported claims by his lawyer that Bradley's arrest had been made without probable cause, and a statement by Bradley that he had "committed no crime, the police had no legitimate reason to think that [he] had committed a crime and they had no valid reason to arrest [him]." (A40)  "[M]ere bald-faced allegations of misconduct" such as these do not merit evidentiary hearings. Voigt, 89 F.3d at 1067.

We also find that Bradley's arrest was supported by probable cause, and that therefore all evidence arising out of his arrest was properly admitted.  As established at trial, at the time of Bradley's arrest, the Customs Agents knew that Chambers had imported over 500 grams of cocaine in her shoes and that she was meeting two men at the airport, whose descriptions matched Kerr and Bradley; they had observed Bradley pacing in and out of the airport and conversing with Kerr; they then saw Bradley approach Chambers, lead her out to his car, speak with Kerr, and begin to enter his car with Chambers.  These facts are enough to "warrant a prudent man in believing that [Bradley] had committed or was committing an offense."  United States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002).

Accordingly, we find that the District Court did not abuse its discretion in denying Bradley an evidentiary hearing, and that the evidence gathered pursuant to his arrest was properly admitted.

B.  Limitation of Cross-Examination of Shaquana Pressley

Bradley next appeals the District Court's limitation of his cross-examination of Shaquana Pressley.  We review the District Court's decision to limit cross-examination for abuse of discretion, United States v. Ellis, 156 F.3d 493, 498 (3d Cir. 1998), reversing only if the limitation affected Bradley's substantial rights.  United States v. Conley, 92 F.3d 157, 169 (3d Cir. 1996).

We find no abuse.  In his cross-examination, Bradley was given the opportunity to fully explore the details surrounding Pressley's conditional discharge for the offense of filing a false report.  He obtained the full impeachment value of her prior criminal conduct and was only limited when he ventured into areas irrelevant to her credibility.

In light of the foregoing, we will affirm Bradley's conviction.

### III.  Henrietta Chambers

A.  Minor Role Adjustment

Chambers first appeals the District Court's decision not to grant her a downward adjustment of two levels in her Offense Level pursuant to U.S.S.G.  3B1.2(b) for her minor role in the conspiracy.  Because the District Court's denial of the adjustment rested on the factual determination that Chambers was not a minor participant, we review that decision for clear error.  United States v. Brown, 250 F.3d 811, 818 (3d Cir. 2001); United States v. Price, 13 F.3d 711, 735 (3d Cir. 1994).

The record supports the District Court's determination.  The District Court adopted the findings of Chambers' Presentence Investigation Report and assessed Chambers' relationship to the other participants, the importance of her actions to the venture, and her awareness of the nature and scope of the conspiracy.  United States v. Isaza-Zapata, 148 F.3d 236, 239 (3d Cir. 1998).  The District Court considered that Chambers had a direct relationship with Bradley, the manager of the conspiracy; that she assisted Pressley and Pamela Reeves when they imported cocaine in May; that she received wired funds to facilitate the conspiracy and obtain the cocaine; that she knew she was importing drugs; and that she willingly participated in the importation.  In light of these facts, the District Court's finding that Chambers did not play a minor role is not clearly erroneous.

B.  Safety Valve

Chambers next appeals the District Court's decision not to grant her a two-point downward adjustment under 18 U.S.C.  3553(f) and U.S.S.G.  5C1.2 (the "safety valve" provision).  We review the District Court's factual findings for clear error and exercise plenary review over the District Court's application of the facts to the law. United States v. Sabir, 117 F.3d 750, 754 (3d Cir. 1997).  We find no error.

The District Court found that as of the time of the sentencing hearing, Chambers had not truthfully provided the government with all relevant information regarding the conspiracy, and therefore that she had not met prong (5) of the safety valve requirements. Specifically, the District Court adopted the PSI findings that Chambers had provided

Pressley and Reeves with cocaine-filled shoes and found Chambers' denial of her participation to be a lie.  These factual findings are not clearly erroneous. Applying the safety valve provision de novo, we conclude that Chambers' failure to tell the government the truth about her participation in the May importation up to and including the time of the sentencing hearing was sufficient to warrant the District Court to refuse to apply the safety valve.

Accordingly, we will affirm Chambers' sentence.

_____

TO THE CLERK OF COURT:

Please file the foregoing opinion.

/s/ Majorie O. Rendell
Circuit Judge