UNITED STATES of America,

v.

Steven SALLINS, Appellant.

No. 92–1694.

United States Court of Appeals,
Third Circuit.

Argued March 29, 1993.

Decided May 18, 1993.

Elaine De Masse (argued), Asst. Defender, Sr. Appellate Counsel,

L. Felipe Restrepo, Federal Court Div., Defender Ass'n of Philadelphia, Philadelphia, PA, for appellant.

Michael M. Baylson U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, Mary E. Crawley (argued), Asst. U.S. Attys., Philadelphia, PA, for appellee.

Before: SLOVITER, Chief Judge, and COWEN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

A jury convicted defendant Steven Sallins on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988). Sallins claims that the district court erred by admitting hearsay evidence of a police radio dispatch and a police computer record detailing the contents of a call to 911. Because we agree that the contents of the police radio dispatch and the police computer record were inadmissible hearsay, we will reverse Sallins' conviction and remand for a new trial.

### I.

The government first tried Sallins on the charge of possession of a firearm by a convicted felon in November 1991. At that trial, Sallins objected to the disputed hearsay evidence. The district court sustained the objection and excluded the evidence. The trial ended in a mistrial because the jury failed to reach a unanimous verdict.

Sallins' second trial resulted in the present conviction. At trial, Philadelphia Highway Patrol Officer Antonio Santiago testified that on January 25, 1991 at approximately 7:00 p.m., he and his partner, Officer Mark Howard, received a police radio dispatch. Over defense counsel's objection,[1] Santiago revealed the contents of the radio call by stating that, as a result of the call, he proceeded to the 2500 block of North Franklin Street looking for a black male wearing all black clothing who was carrying a gun. Howard, who testified after Santiago, also told the jury that the radio call prompted him to look for a black male with all black clothing carrying a gun.

Officer Santiago testified that as he turned onto North Franklin Street at a high rate of speed, he observed a black male dressed in all black clothing, later identified as Sallins, walking quickly along the sidewalk. As the police car neared Sallins, he turned his head and looked in the officers' direction. Sallins then threw down what appeared to be a gun and ran. The two officers continued down the block, stopped, and exited the police car. While Howard chased and apprehended Sallins, Santiago went to the area where Sallins had been walking and retrieved a gun from underneath a car parked near the sidewalk.

On cross-examination of Santiago, defense counsel questioned whether the audio tape of the communication between the dispatcher and the police car had been preserved. Santiago responded that he was not sure. The government later called as a witness Kimberly Casey, a Police Officer assigned to the police radio room. Over defense counsel's objection, the government was permitted to introduce the contents of a radio room computer record, which revealed that on January 25, 1991 at approximately 7:00 p.m., a call was received via 911 stating there was a black male wearing all black clothing carrying a gun on the 2500 block of North Franklin Street. The government argued that it

---

1. Fed.R.Evid. 103(a)(1) requires that the ground for an objection be stated specifically, if it is not apparent from the context. Although Sallins did not state the specific ground for his objection, the ground was apparent because the same trial judge had sustained a specific hearsay objection to the same testimony at the first trial.

was offering Casey's testimony to rebut any intimation by defense counsel that the police radio call never occurred.

## II.

■ Sallins first claims that the contents of the message received by Santiago and Howard over police radio was inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). The government argues that the radio dispatch was not hearsay because it was not offered to prove the truth of the matter asserted—that there was in fact a black male dressed in all black with a gun on the 2500 block of North Franklin Street. According to the government, the contents of the radio call were introduced only as background to explain why the officers went to North Franklin Street and acted as they did.[2] Whether evidence is hearsay is a question of law subject to plenary review. *See United States v. McGlory,* 968 F.2d 309, 332 (3d Cir.1992).

Several courts have admitted testimony by police officers or government agents revealing information received out-of-court for the limited purpose of establishing background for the officers' actions. *See, e.g., United States v. Brown,* 923 F.2d 109, 111 (8th Cir.), *cert. denied,* ——— U.S. ———, 112 S.Ct. 110, 116 L.Ed.2d 80 (1991); *United States v. Vizcarra–Porras,* 889 F.2d 1435, 1439 (5th Cir. 1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990); *United States v. Mejia,* 909 F.2d 242, 247 (7th Cir.1990). While officers generally should be allowed to explain the context in which they act, the use of out-of-court statements to show background has been identified as an area of "widespread abuse." 2 *McCormick On Evidence* § 249, at 104 (4th ed.1992).

In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. However, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

*Id.* (citations omitted).

■ Whether a disputed statement is hearsay frequently turns on the purpose for which it is offered. If the hearsay rule is to have any force, courts cannot accept without scrutiny an offering party's representation that an out-of-court statement is being introduced for a material non-hearsay purpose. Rather, courts have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid.

■ The facts of the present case undermine the government's position that testimony regarding the police radio call was admissible as background to explain why Santiago and Howard went to North Franklin Street and arrested Sallins. First, to the extent that any background was needed to explain why Santiago and Howard sped onto North Franklin Street, the government simply could have elicited testimony that the officers were responding to a radio call or information received. Second, no background beyond what the officers testified they observed was necessary to help the jury understand why Santiago and Howard pursued and arrested Sallins. Santiago stated that when Sallins looked toward the marked police car, he threw down what looked like a gun and ran. Santiago also testified that he recovered a gun from the very location where he believed he saw Sallins throw one. This testimony was more than sufficient to explain why Santiago and Howard acted as they did.

---

**2.** At trial, the government did not state its purpose for offering the evidence and the district court did not state its reason for admitting the evidence. Because the government argued at the first trial to the same district court judge that the evidence was admissible to show background, we will assume that the district court believed the evidence was admissible as background.

Additional background was unnecessary.[3]

Not only was the testimony regarding the radio call inadmissible to show background, it clearly was not offered for that purpose. The absence of a tenable non-hearsay purpose for offering the contents of the police radio call establishes that the evidence could have been offered only for its truth value. *See United States v. Bettelyoun,* 892 F.2d 744, 746 (8th Cir.1988) (court found no valid reason for admission of testimony relating the contents of a police radio call other than for its truth). Moreover, the government's closing argument to the jury dispels any conceivable doubt as to the true evidentiary purpose of the disputed testimony. During the closing argument, the prosecutor stated:

> Does it, could it be just a coincidence that the defendant is wearing dark clothing, that matches the description on the radio call? Could it be just a coincidence that the defendant is a black male? That also matches the description in the radio call. Could it be just a coincidence that the defendant is on the 2500 block of North Franklin Street? That's the location that was put in on the radio call. And the officers told you, there wasn't anybody else around there. Around the place where the gun was found.
>
> Was it just a coincidence that the defendant was there about a minute after the call was put in? ... Could that just be a coincidence? Is it just a coincidence that Officer Santiago saw the man throw what he believed was a gun.

App. at 220–21. Repeatedly, the government used the contents of the radio call to prove the truth of the matter asserted, that there was a black man wearing all black clothes with a gun at the place and time in question, as well as to establish the implied fact that Sallins was the man with the gun. Because the details of the radio call were offered for their truth value, the testimony was hearsay and should have been excluded.

### III.

Sallins also claims that the contents of the police computer record of a call received by 911 were inadmissible hearsay. The record showed that on the evening of January 25, 1991, a caller to 911 stated there was a black male wearing all black clothing carrying a gun on the 2500 block of North Franklin Street. The government argues that the report was admissible under Fed. R.Evid. 803(8), the public records exception to the hearsay rule. Sallins agrees that the record fits within the definition of a public record under Rule 803(8), but argues that the portion of the record detailing the call into 911 should have been excluded as double hearsay.

In *United States v. De Peri,* 778 F.2d 963 (3d Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986), we addressed a "hearsay within hearsay" problem similar to the one presently at issue. The defendant in *De Peri* wanted to introduce into evidence reports prepared by an FBI agent detailing his interviews with certain third parties. We agreed with the district court that the third parties' out-of-court statements were not admissible under the public records exception. We held that while Rule 803(8)(B) would permit the defendant to introduce the reports themselves, which ordinarily would be considered hearsay, a separate exception was required for the third parties' out-of-court statements. *Id.* at 977. Here, as in *De Peri,* even if the 911 record itself is admissible under Rule 803(8), details as to the out-of-court statements made by the person who called 911 are not admissible unless covered by a separate hearsay exception.

The government sidesteps the issue of whether a separate hearsay exception applies and instead relies on the Eighth Circuit case

---

**3.** The government even acknowledges "that the better practice would have been to have limited the questions to those asked at the first trial." Brief of Government, at 7. At the first trial, after Santiago testified that he received a radio call, the government asked: "Officer Santiago, after you received the radio call, what did you do?" App. at 325. At the second trial, the government further asked what Santiago and Howard were "looking for" as a result of information received in the radio call. App. at 86, 130. In response to this question, both officers revealed the contents of the radio call by testifying that they were looking for a black male in black clothing carrying a gun.

of *United States v. Enterline*, 894 F.2d 287 (8th Cir.1990). There, the district court admitted testimony by an FBI agent that he ran a computer check, which showed that three vehicles found on defendant's property had been reported stolen. Recognizing that the computer report was hearsay, the court of appeals addressed whether the report was admissible as a public record under Rule 803(8)(B). Although Rule 803(8)(B) carves an exception to the hearsay rule for "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," Rule 803(8)(B) excludes "matters observed by police officers and other law enforcement personnel" in criminal cases. The court concluded that the exclusion did not apply, because the computer report did not contain matters contemporaneously observed by a police officer at the scene of a crime. *Id.*

The issue in *Enterline* was whether the computer report itself was admissible, or "within the exclusion found in Rule 803(8)(B) for matters observed by law enforcement officers in a criminal case." *Id.* at 290. The issue in the present case is not whether the 911 record itself is admissible,[4] but whether the details of the call to 911 contained in the record are inadmissible as hearsay within hearsay. Because the court in *Enterline* did not address whether the police computer report there contained double hearsay, the court's holding is inapposite.

The other cases cited by the government are similarly inapposite or distinguishable. In each of those cases, the court either did not address the double hearsay issue or upheld the admission of the alleged double hearsay on the grounds that it was offered to prove something other than the truth of the matter asserted. Here, the government has failed to establish that the contents of the 911 record were offered for a valid non-hearsay purpose. As already discussed, there is no merit in the government's argument that the details of the 911 call were admissible as background to explain the actions of Santiago and Howard. Also to no effect is the government's contention that the 911 record was offered not for its truth, but to rebut defense counsel's intimation that the

radio dispatch to Santiago and Howard never occurred. Because the officers' testimony as to the contents of the radio dispatch was not admissible in the first place, additional evidence of the 911 call was not admissible to corroborate the earlier testimony. *Cf. United States v. Mohel*, 604 F.2d 748, 754 (2d Cir.1979) ("[O]ne inadmissible statement regarding another crime is not rendered admissible merely because it corroborates another equally inadmissible statement on the same subject").

## IV.

■ The government argues that any error by the district court was harmless. An evidentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction. *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir.1976). Here, the only admissible evidence linking Sallins to the possession of a gun was circumstantial evidence conveyed through the testimony of Officers Santiago and Howard. Sallins vigorously challenged the credibility of this testimony, which had failed to produce a unanimous guilty verdict at Sallins' first trial. Because the officers' testimony was hotly contested, we cannot say with any degree of certainty that the evidence of the police radio call and the 911 computer record did not contribute to the jury's verdict. The evidence cemented the government's case by adding an invisible, presumably disinterested witness who allegedly saw precisely what the police said they saw.

Because we hold that the contents of the police radio call and the 911 radio room record were prejudicial hearsay, we need not consider Sallins' claim that admission of the evidence violated his Sixth Amendment right to confront witnesses against him. We also need not consider his claim that the district court erred by enhancing his sentence pursuant to 18 U.S.C. § 924(e) (1988 & Supp. III 1991).

---

4. We assume without deciding that the record itself would satisfy Rule 803(8)(B).

## V.

For the foregoing reasons, we will reverse the district court's judgment of conviction and remand for a new trial.