NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3195
_____

UNITED STATES OF AMERICA

v.

MAURICE L. ROSS,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-17-cr-00089-001)
District Judge: Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 16, 2021

Before:  PORTER, RENDELL and FISHER, *Circuit Judges*.

(Filed: March 17, 2021)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

Maurice Ross appeals his conviction and sentence in connection with three armed

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

robberies of a Harrisburg, Pennsylvania convenience store. Ross was charged with three counts each of Hobbs Act robbery; possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1); and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). A jury convicted him on all counts. Ross was sentenced to 77 years in prison, including three consecutive 25-year terms for the violations of Section 924(c). Ross raises several issues on appeal. Because none entitles him to relief, we will affirm.

I.[1]

A.

Ross argues, first, that the District Court erred by denying his motion to suppress evidence.[2] He contends the search of his residence violated the Fourth Amendment because the warrant was not supported by probable cause. According to Ross, the supporting affidavit fell short because it did not explain why the affiant believed that evidence would be found at Ross's home. Additionally, Ross says, the information in the affidavit had become stale by the time police sought a warrant, fifteen days after the last robbery. We disagree.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] "Our review of the denial of a motion to suppress is for clear error as to the District Court's findings of fact, and plenary as to legal conclusions in light of those facts." *United States v. Williams*, 974 F.3d 320, 350 (3d Cir. 2020) (quoting *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018)).

In reviewing a magistrate's initial determination of probable cause, we ask "only 'whether the magistrate had a substantial basis for concluding that probable cause existed.'"[3] Probable cause exists if, "given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4] The age of the information contained in the affidavit "is a factor in determining probable cause," but we also consider "the nature of the crime and the type of evidence."[5] Where a criminal pattern is involved, "the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit . . . loses significance."[6]

Here, we see no error, let alone clear error, in the District Court's findings that the affidavit in this case: (1) described in detail specific items the suspect wore during the robberies, as evidenced by store surveillance video and clerk testimony; and (2) explained how police identified Ross through his probation officer, after identifying the address associated with a silver minivan driven by the person who cashed lottery tickets stolen during the robberies. In our view, the reasons were plain why the affiant believed that evidence would be found at Ross's home. Ross was allegedly identified in a photo array by the store clerk who was present during the first two robberies. He was also

[3] *Id.* (quoting *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010)).
[4] *Id.* at 350-51 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[5] *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993).
[6] *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005).

allegedly identified by the manager of the Sheetz store where the stolen tickets were cashed. Ross was again identified by his probation officer using surveillance video from the Sheetz, the affidavit said. Lastly, the probation officer confirmed Ross's home address.

Fifteen days elapsed between the third robbery and the affidavit's submission. But given the repeated nature of the crimes under investigation here, that delay was hardly decisive. Considering all the circumstances—including the multiple identifications of Ross and the fact that the suspect apparently retained his clothes, mask, and handgun between the robberies—we conclude that the affidavit was not stale. On the contrary, it provided a more than substantial basis for the magistrate's finding of probable cause.

## B.

Ross next argues that he should have been granted a new trial on the charges of brandishing a firearm in furtherance of a crime of violence, because Hobbs Act robbery is not a "crime of violence."[7] But as this Court has recently held, "Hobbs Act robbery necessarily has as an element the use, attempted use, or threatened use of physical force against the person or property of another and is therefore categorically a crime of

---

[7] 18 U.S.C. § 924(c)(1)(A). A ruling on a new trial motion is generally reviewed for abuse of discretion. *United States v. Quiles*, 618 F.3d 383, 390 (3d Cir. 2010). However, because the District Court denied Ross's motion on purely legal grounds, our review is *de novo*. *Id.*

4

violence."[8] That decision binds us here. Ross's convictions under Section 924(c) therefore suffer no legal infirmity, and the District Court did not err in denying the motion for a new trial.

C.

Next, Ross says the District Court erred by admitting evidence in violation of the rule against hearsay.[9] We agree. We conclude, however, that on the facts of this case "it is highly probable that the error did not contribute to the judgment."[10]

At trial, the Government offered in evidence two "Stolen Ticket Reports" generated by the Pennsylvania Lottery. These reports contain out-of-court statements by the owner of the robbed convenience store, Sukhdev Riar—specifically, his estimates of the serial numbers of the stolen lottery tickets, which he provided to Lottery staff after the second and third robberies. The District Court admitted the reports into evidence as business records.[11]

On appeal, Ross argues that the reports were inadmissible in their entirety because

---

[8] *United States v. Walker*, --- F.3d ---, No. 15-4062, 2021 WL 833994, at *7 (3d Cir. Mar. 5, 2021).

[9] "Whether testimony is hearsay is a question of law over which we exercise plenary review. To the extent the District Court's ruling was based on a permissible interpretation of the Federal Rules of Evidence, however, we review only for an abuse of discretion." *United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010) (citations omitted).

[10] *United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019) (quoting *United States v. Mathis*, 264 F.3d 321, 342 (3d Cir. 2001)).

[11] *See* Fed. R. Evid. 803(6).

the witness who authenticated them, the Lottery's acting director of security, did not personally receive or verify them. But "foundation evidence for the admission of a business record [need not] be provided by the record's custodian."[12] Here, the acting director of security testified in detail about the Lottery's system for creating and managing stolen ticket reports. He explained that reports are made contemporaneously with allegations of theft by retailers. And he affirmed that they are kept in the regular course of the Lottery's business. In short, he demonstrated the necessary "'familiarity with the record-keeping system' and . . . ability to attest to the foundational requirements of Rule 803(6)."[13]

The statements of the store owner, Riar, within the reports are a different story. The Government contends these statements were not offered to prove the truth of the matter asserted—*i.e.*, not offered to prove that tickets bearing the precise serial numbers Riar identified were indeed stolen. But the District Court rejected this argument. It admitted the reports—including Riar's out-of-court statements—without any limiting instruction. The statements therefore are hearsay[14] and, under Rule 805, were

---

[12] *United States v. Console*, 13 F.3d 641, 656 (3d Cir. 1993).

[13] *Id.* at 657 (quoting *United States v. Pelullo*, 964 F.2d 193, 201-02 (3d Cir. 1992)).

[14] *See United States v. Browne*, 834 F.3d 403, 416 (3d Cir. 2016) (treating as hearsay statements that "functioned at least in part to prove the truth of the matter asserted," regardless of "the other reasons the Government may have sought to admit [them]").

inadmissible unless they "conform[ed] with an exception to the rule."[15] Here, the

Government makes no attempt to identify a hearsay exception that covered Riar's

statements within the reports. Nor do we believe one applies.[16] Their admission therefore

constituted error.

Nevertheless, after careful review of the record, we conclude the error was

harmless. "An evidentiary error is harmless only if it is highly probable that the

improperly admitted evidence did not contribute to the jury's judgment of conviction."[17]

"The dispositive question . . . is not whether, in the absence of the inadmissible hearsay

evidence, the jury nevertheless could have convicted."[18] "Rather, the question is whether

the improperly admitted statements may have helped to 'cement[] the [G]overnment's

case by adding an invisible, presumably disinterested witness' to corroborate the

[G]overnment's position."[19]

Here, we are confident Riar's out-of-court statements did not contribute to the

---

[15] Fed. R. Evid. 805. As we have explained, the first level of hearsay—each report as a whole—was admissible under Rule 803(6).

[16] The most plausible candidate is again the business records exception. *See* Fed. R. Evid. 803(6). But that exception requires "that the declarant made the record in the regular course of the business activity." *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989). Here, Riar's estimates of the stolen tickets' serial numbers were not made in the regular course of his business, but were specially created for the purpose of reporting theft.

[17] *United States v. Lopez*, 340 F.3d 169, 177 (3d Cir. 2003) (quoting *United States v. Sallins*, 993 F.2d 344, 348 (3d Cir. 1993)).

[18] *Id.*

[19] *Id.* (quoting *Sallins*, 993 F.2d at 348).

jury's verdict. For one thing, the remaining evidence against Ross was substantial. He was a physical match for the person in the store surveillance videos, and the search of his bedroom revealed clothing and a distinctive blue gun matching those worn and used by the robber. The decisive factor, however, is that we cannot say Riar's out-of-court statements "add[ed] an invisible, presumably disinterested witness to corroborate the [G]overnment's position," because Riar himself testified at trial.[20] Defense counsel cross-examined him—and re-cross-examined him—on how he estimated the stolen tickets' serial numbers, and Riar acknowledged that he used a certain degree of guesswork. In sum, Riar's out-of-court statements were essentially duplicative of his trial testimony. They added detail, perhaps, but they did not "add[] an invisible witness," and we see no realistic possibility they "cement[ed] the [G]overnment's case."[21] We conclude therefore that the evidentiary error was harmless.

### D.

Lastly, Ross argues that the District Court erred by imposing consecutive rather than concurrent sentences for his three Section 924(c) convictions.[22] According to Ross, those three convictions should have been merged for sentencing because they involved an ongoing course of conduct. Ross also says that Section 924(c) is ambiguous because it is

---

[20] *Id.* (internal quotation marks and citation omitted).

[21] *Id.* (internal quotation marks and citation omitted).

[22] The District Court's sentencing decision was based on its interpretation of Section 924(c), so we exercise plenary review. *United States v. Easter*, 975 F.3d 318, 322 (3d Cir. 2020).

silent on merger, and that the rule of lenity requires us to resolve any doubt in his favor. We cannot accept these arguments. Section 924(c) provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with *any other* term of imprisonment imposed on the person."[23] There is nothing ambiguous in this command. As the District Court correctly concluded, the statute ruled out concurrent sentences for Ross's three violations of Section 924(c), which were not a single criminal episode, but three separate armed robberies committed on three separate dates.[24]

## II.

For the foregoing reasons, we will affirm.

---

[23] 18 U.S.C. § 924(c)(1)(D)(ii) (emphasis added).

[24] Ross cites *United States v. Benjamin*, in which we held that the defendant's two felon-in-possession convictions should be merged, because those convictions stemmed from the same, uninterrupted course of firearm possession. 711 F.3d 371, 378-79 (3d Cir. 2013). But *Benjamin* has no application here, where the three convictions arose from three discrete armed robberies.